UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

US EQUAL EMPLOYMENT OPPORTUNTIY COMMISSION,

Plaintiff,

v.

PLACER ARC d/b/a PLACER ADVOCACY RESOURCES & CHOICES,

Defendant.

No. 2:13-cv-0577-KJM-EFB

ORDER

This matter is before the court on defendant Placer ARC d/b/a Placer Advocacy Resources and Choices' (ARC) Motion for Summary Judgment or, in the alternative, Partial Summary Judgment. Def.'s Mot. Summ. J., ECF 67. The U.S. Equal Employment Opportunity Commission (EEOC) opposes the motion. Opp'n, ECF No. 72. The court held a hearing on the matter on January 30, 2015, at which Debra Smith and Ami Sanghvi appeared for plaintiff and Robert Rediger and Candice Rediger appeared for defendant. As explained below, the court GRANTS in part and DENIES in part defendant's motion.

\\\\\\

\\\\\\

\\\\\\

\\\\\\

I. BACKGROUND

A. PROCEDURAL BACKGROUND

On March 25, 2013, the EEOC filed a complaint on behalf of charging party[1] Homeyra Kazerounian alleging three causes of action. Compl., ECF 1. The complaint alleges violations of: (1) Title I of 42 U.S.C. 12101 *et seq*. (the Americans with Disabilities Act (ADA)) (disability discrimination); (2) Titles I and V of the ADA (retaliation); and (3) Titles I and V of the ADA (constructive discharge). Plaintiff seeks (1) injunctive relief; (2) an order defendant "institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;" (3) appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief including but not limited to reinstatement of plaintiff; (4) compensation for past and future pecuniary losses, including job search expenses and medical expenses, in amounts to be determined at trial; (5) compensation for past and future nonpecuniary losses including inconvenience, pain and suffering, loss of enjoyment of life, anxiety, stress, and humiliation, in amounts to be determined at trial; (6) punitive damages in amounts to be determined at trial; (7) further relief as the court deems necessary and proper; and (8) costs of this action. *Id*. at 6-7. On April 22, 2013, defendant filed an answer to plaintiff's complaint. Answer, ECF No. 5.

Defendant filed its first amended answer on February 27, 2014. ECF No. 32. On December 31, 2014, defendant brought the instant motion for summary judgment on all of plaintiff's causes of action. ECF No. 67. Plaintiff filed an opposition on January 14, 2015. ECF No. 72. Defendant filed a reply on January 23, 2015. ECF No. 73.

B. EVIDENTIARY OBJECTIONS

Plaintiff has submitted objections to defendant's statement of undisputed facts in support of its motion for summary judgment. ECF No. 73. These objections do not state a basis

[1] Although the EEOC brings this action on behalf of charging party Kazerounian, the court will refer to Kazerounian as plaintiff throughout for clarity.

for the objection, but state only that plaintiff denies certain facts. The court interprets the objections as mere denials, as plaintiff does not provide any basis for the objection by which the court can rule.

Defendant has submitted voluminous objections to plaintiff's Additional Material Facts. The majority of the objections question the relevancy and materiality of the evidence. Because the court does not rely on irrelevant evidence when considering motions for summary judgment, such objections are redundant to the practice of summary judgment itself. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). To the extent the court does rely on an additional material fact to which defendant objects, that objection is overruled.

Defendant also has submitted several objections to the declarations submitted with plaintiff's opposition to the motion for summary judgment. *See* ECF Nos. 81-87. Specifically, defendant objects to the declarations of Linda Chapman, Karla Gable, Lindy Hicks, Angela Payne, Gloria Hew, Homeyra Kazerounian, as well as and Exhibits 2, 5, 6 and 12 through 99 attached to the declaration of Debra Smith. Defendant objects to the declarations on grounds of hearsay, relevance, as vague and ambiguous, lacking foundation, as speculative or conclusory, misstating the evidence, or as opinions of a lay witness. To the extent any declarant makes statements regarding matters of which he or she does not have personal knowledge, or which constitute legal conclusions, the court does not rely on them in resolving the pending motion. To the extent defendant argues any declarant's statements misstate the evidence, those objections also are overruled as "go[ing] to the weight of the evidence, not the admissibility of the testimony." *Galvan v. City of La Habra*, No. SACV 12-2103, 2014 WL 1370747, at *4 (C.D. Cal. Apr. 8, 2014); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1034 (C.D. Cal. 2013).

Defendant's numerous hearsay objections also will not be sustained at this stage. *Quanta Indem. Co. v. Amberwood Dev. Inc.*, No. CV-11-01807, 2014 WL 1246144, at *3 (D. Ariz. Mar. 26, 2014) ("evidence containing hearsay statements is admissible only if offered in opposition to the motion"). On summary judgment, "objections to the form in which the evidence

is presented are particularly misguided where, as here, they target the non-moving party's evidence." *Burch*, 433 F. Supp. 2d at 1119.

Defendant objects to the declaration of Lindy Hicks (ECF No. 74-3), saying the EEOC obtained the declaration on an ex parte basis without court permission and in violation of Rule 4.2 of the ABA Model Rules of Professional Conduct. ECF No. 83. At hearing, counsel stated the declaration was obtained after Hicks's employment with defendant, which ended in December 2007. Hicks Decl. ¶ 1. The ABA rules are not binding on this court; regardless, plaintiff's counsel did not violate the rule when speaking with a former employee of defendant. *United States v. W. R. Grace*, 401 F. Supp. 2d 1065, 1069 (D. Mont. 2005) (government does not violate Rule 4.2 when initiating ex parte contact with former employees). Defendant does not allege plaintiff acted outside the scope of the Federal Rules of Civil Procedure or this court's Local Rules governing discovery in obtaining Hicks' declaration. The objection is overruled.

Defendant objects to plaintiff's exhibits on the basis of lack of authentication. Each of the documents, which include excerpts of depositions[2] and correspondence to which plaintiff is a party, can be readily authenticated at trial by plaintiff or the deponent. The documents are not disputed as inaccurate by either party, and can be inferred as authentic based on their contents. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002) (citing Fed. R. Evid. 901(b)(4) (authenticity may be satisfied by the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."); *Prime Ins. Syndicate, Inc. v. Damaso*, 471 F. Supp. 2d 1087, 1093 (D. Nev. 2007) (considering unauthenticated exhibits where defendants neither challenge the authenticity of the exhibits nor the facts contained therein, and because the exhibits' appearance and contents support authentication).

Notwithstanding the foregoing, at hearing plaintiff's counsel conceded Exhibit 2 and Exhibits 5 and 6, the depositions of Shana Williams and James Brune, were not properly authenticated, and requested the ability to cure the deficiency by having the depositions

[2] The court notes the full deposition transcripts have been lodged electronically with the court, as required by the Local Rules.

authenticated by the deponent and the court reporter who transcribed the deposition. The court granted that request (ECF No. 91) and plaintiff filed amended versions of Exhibits 5 and 6, but not Exhibit 2, on February 5, 2015 (ECF Nos. 92, 93). The objection is therefore overruled as to Exhibits 5 and 6 based on the amended filings.

C. FACTUAL BACKGROUND

Where plaintiff has not disputed a fact, the court cites to defendant's statement of undisputed facts. For all other material facts on which the court relies, the court finds no genuine dispute and provides a supporting citation to support this determination.

Defendant ARC is a not for profit organization providing programs for the support, education, and well-being of individuals with intellectual and developmental disabilities. UMFs 1, 2. Plaintiff Kazerounian is deaf. Kazerounian Depo. 13:24-25, Ex. A, Rediger Decl., ECF No. 71; Kazerounian Decl. ¶ 1, ECF No. 75. She was hired by ARC in April 2005 as an Instructional Aide in Auburn, California after volunteering at that location for several months. UMF 4; Kazerounian Decl. ¶¶ 6-7. The essential functions of plaintiff's job were identified by the ARC job description. UMF 11. These duties included reading information in client files, creating reports of client files detailing the client's behavior or attitude, and creating daily reports referred to as "dailies." UMFs 25-27. ARC provided an ASL interpreter "for almost every" meeting plaintiff attended at the Auburn location. Kazerounian Decl. ¶ 10.

In February 2008, Kazerounian was transferred to ARC's Roseville Adult Center (RAC). UMF 6; Kazerounian Decl. ¶ 7. Elizabeth Marchant served as Deputy Director of the RAC from April 16, 2007 until July 2013. UMF 30. Patti Felland was plaintiff's supervisor at the RAC. UMF 28. Plaintiff was trained by an individual who demonstrated some of the job duties for her. UMFs 20, 22. Plaintiff testified the training should have been provided with an ASL interpreter, and because ARC never made arrangements for translation, "so many issues . . . were unclear." Kazerounian Depo. Ex. 4 at 3, Smith Decl. ECF No. 76-4. At the RAC, ARC provided qualified ASL interpreters "a handful of times" and plaintiff "struggled"; the provided note-takers made her "sad and frustrated" and made it difficult for plaintiff to understand. Kazerounian Decl. ¶¶ 11-14. At some point during plaintiff's employment, ARC hired Sheila

Maas as an instructional aide, and to work as needed at RAC as an interpreter for plaintiff. UMF 81.

Throughout her employment, plaintiff worked from 25 to 30 hours a week at $10.50 per hour. UMFs 52, 53. On February 3, 2008, upon beginning at RAC, plaintiff attended a meeting with Marchant, Felland, and interpreter Autumn Saulisberry, to review the essential functions of her position. UMF 38. These duties were later reviewed in plaintiff's performance evaluation on October 9, 2008. UMFs 12, 28. In the interim, on March 21, 2008, Sheila Maas interpreted a meeting for plaintiff at which plaintiff became visibly upset with the interpreter; she was "visibly frustrated, hitting the table, rolling her eyes, grunting." Marchant Depo. at 81, Rediger Decl. at 93. Marchant, through an interpreter, told plaintiff this behavior was "completely unprofessional." *Id*.; Rediger Decl. at 93 (letter from Barbara Guenther to plaintiff about the incident); Kazerounian Depo at 206, Ex. 1 ECF No. 76-1. On March 25, 2008, plaintiff was issued a disciplinary write-up for this incident. UMF 73; *see also* Ex. D, Rediger Decl. On April 21, 2008, ARC denied a request to meet with plaintiff's "advocate" about plaintiff's employment. UMFs 77, 78, *see also* Ex. F at 87, Rediger Decl.

On May 28, 2008, plaintiff sent a letter to ARC Executive Director Guenther requesting a sign language interpreter be provided for any staff meetings and any meetings with Guenther or the Human Resources (HR) manager as a reasonable accommodation. UMF 47; Ex. 48, ECF No 78. Interpreters generally charged ARC a minimum of $55 per hour with a minimum of two hours per visit. UMF 50. There are three types of staff meetings for RAC employees: daily staff meetings, weekly Friday staff meetings, and in-service all staff meetings. UMF 48.

During her performance evaluation, on October 9, 2008, plaintiff was issued a poor performance review. UMF 71. Marchant testified there were basic job functions plaintiff did not perform well. Marchant Depo. at 115-16, Ex. C, Rediger Decl. On occasion, plaintiff would leave clients unattended or, in one incident, compromised the safety of a client by not fastening his or her seatbelt, or she would neglect to do her paperwork. *Id*.; *see also id*. at 47. Plaintiff testified she was written up "most of the time." Kazerounian Depo. at 270, Ex. 1, ECF No. 76-1.

Shortly thereafter, on October 22, 2008, Felland wrote an email to plaintiff detailing her failure to use her communication book, insubordination, inability to work independently and appropriately, and her general poor performance. Rediger Decl. at 160. A month after her performance review was issued, on November 7, 2008, plaintiff attended a meeting with Felland, Marchant, and an interpreter, Deborah Pomeroy, to review her job duties and her performance review. UMF 31; Ex. E, Rediger Decl.

On or about December 9, 2008, plaintiff filed a complaint alleging disability discrimination and retaliation with the California Department of Fair Employment and Housing ("DFEH"), stating she was not receiving a reasonable accommodation for her disability, and she had communicated this to Guenther on or about March 25, 2008 in a letter. UMFs 8, 70; Ex. I, Rediger Decl.

On January 20, 2009, ARC informed its employees, board of directors, clients, and caregivers that services would possibly shut down in March 2009 due to funding. UMF 67. On or about February 24, 2009, plaintiff filed an internal complaint of discrimination. UMF 72. In her complaint to Guenther and Elizabeth Campbell in HR, plaintiff alleged "insulting, cruel, and discriminatory treatment," including behavior by Felland, whom plaintiff claims "insulted and yelled at" plaintiff. Rediger Decl. at 98. At some point prior to plaintiff's internal complaint, during her employment, plaintiff failed to properly log medication she had given to an ARC client; this was memorialized in a written and signed memorandum dated February 27, 2009. UMFs 40, 41; *see also* Ex. N, Rediger Decl. Plaintiff explained her reasons for the error in an undated letter to Marchant. Ex. 57, Smith Decl., ECF No. 76.

Later that year, on October 22, 2009, Felland sent an email to plaintiff noting and detailing her performance deficiencies, including that she 1) failed to implement the training she had received through an interpreter at an all staff meeting on October 14, 2009, 2) failed to follow the daily schedule, 3) failed to effectively communicate with ARC clients in that plaintiff was unable to understand basic client needs, and 4) disrupted other ARC classes by failing to "appropriately handle the issues in her class" and regularly requiring other staff to assist her. UMF 43; Ex. G, Rediger Decl. One of plaintiff's supervisors, Alison Hoyer, testified plaintiff

often needed to be led through daily tasks and "needed more guidance than some of [the] other staff," although she did not remember the time frame during which the need for guidance manifested itself. UMF 45; Ex. O, Rediger Decl. at 38, 47.

On May 28, 2010, Kazerounian voluntarily terminated her employment with ARC. UMF 7; Ex. L, Rediger Decl. Plaintiff has testified there were times she "thought [she] did wrong," "had a feeling that [she] might get fired" and was told through an interpreter she was "doing a bad job." UMFs 74, 75. Plaintiff testifies she was "pick[ed] on" always, "it was the same thing over and over" of getting negative feedback, and she "had to suffer through it all." Kazerounian Depo at 111-12, Ex. B, Rediger Decl. On October 5, 2010, plaintiff filed a charge of discrimination with the EEOC, alleging constructive discharge in that she "was forced to resign because [supervisor Patti Felland] refused to provide a reasonable accommodation which inhibited [her] from performing the essential functions [of] her job." UMFs 10, 84; Ex. J, Rediger Decl.

## II. STANDARD

Summary judgment is appropriate where a court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When the court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in . . . [the] [non-movant's] favor." *Id.* at 255.

The moving party bears the initial burden of demonstrating to the court "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the burden of persuasion at trial would be on the non-moving party, the movant may satisfy the initial burden by either (1) introducing affirmative evidence that negates an essential element of the non-moving party's claim; or (2) showing that the nonmoving party's evidence is insufficient to establish an essential element of the non-movant's case. *Id.* at

331. When the non-moving party adopts the second option, conclusory statements that the non-moving party lacks any evidence are insufficient to meet the initial burden. *See id.*

Once the moving party satisfies this initial burden, the burden then shifts to the non-moving party, who "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). A fact is "material" when it might affect the outcome of the suit under the applicable substantive law governing the claim. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A factual dispute is "genuine" where the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Rather, to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). Additionally, in resolving the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Thus, for instance, competent testimony by a single declarant may defeat summary judgment though opposed by many other declarants. *United States v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 491-92 (9th Cir. 1990). Affidavits and declarations may be used to support a motion, but summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

/////

/////

III. DISCUSSION

A. First Claim: Disability Discrimination

1. Plaintiff's Claim

To establish a prima facie case of discrimination under the ADA, a plaintiff "must show that she: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of her disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). Defendant argues plaintiff is not a "qualified individual" under the ADA because she is not able to perform the essential functions of her job with or without a reasonable accommodation. Def.'s Mot. at 3. Plaintiff responds she met the minimum qualifications of her position and her performance issues do not negate her capacity and qualification to perform the job. Opp'n at 9.

Under the ADA, a "qualified individual is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 989 (9th Cir. 2007); *see Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1479-80 (9th Cir. 1996). In determining whether one is a "qualified individual" under the ADA, the court applies a two-part test. First, the qualified person must possess the requisite skills, experience, education, and other qualifications for the employment position. *See Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001). Second, the individual must be capable of performing "essential functions." *Id.*

The ADA provides some guidance in determining whether a job requirement is an "essential function." The ADA gives "consideration . . . to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *Cripe*, 261 F.3d at 887 ("Essential functions are fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position."). However, the contents of a job description are not conclusive: "an employer may not turn every condition of employment which it elects to adopt into a job

function, let alone an essential job function, merely by including it in a job description." 42 U.S.C. § 12111(8); *see Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009) (internal citations omitted) (denying summary judgment where, despite a job description, the parties disputed the actual essential functions of that job). Fundamentally, in order to defeat summary judgment of her disability claim, a plaintiff must "demonstrate that her reduced performance in this position was attributable" to the denial of accommodation. *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1157 (9th Cir. 2000).

Here, the essential functions of the instructional aide job as identified in the job description include "instructing classes" in areas of general life skills, teaching "independent living skills," "helping consumers to increase their communication skills by using words or signs," "documenting consumers' daily activities," and "attending weekly staff meetings and training sessions." Job Description, Ex. A, ECF No. 70. The job description also requires knowledge of developmental disabilities, good social skills, and the ability to teach the importance of good grooming, clear communication and functional living skills. *Id*. Defendant contends plaintiff failed to perform the following essential functions of her job: "documenting consumers' daily activities," and "paperwork duties," "log[ging] medication," "implement[ing] training," "follow[ing a] daily schedule," and failing to "effectively communicate with ARC clients" and "work independently." Def.'s Mot. at 8. Defendant offers in support memoranda documenting plaintiff's failure to perform the job duties of logging medication and documenting daily activities, dated February 14, 2008 (Ex. E, Rediger Decl.) and February 27, 2009 (Ex. N, Rediger Decl.); a mixed October 9, 2008 performance review (Ex. C, Marchant Decl.); testimony from Marchant and Felland about plaintiff's performance; and an October 22, 2009 email from Felland to plaintiff about her poor performance (Ex. G, Rediger Decl.).

Plaintiff on the other hand has raised a triable issue as to her ability to perform her essential job duties with sworn declarations from five coworkers attesting to her being "very good with []clients," "a great worker," and a "great team member." *See* ECF Nos. 74-1, 74-2, 74-3, 74-4, 74-5 (declarations addressing the years 2005 to 2010, from coworkers who personally observed plaintiff working at ARC and with clients). Defendant points to *Schuler v. Chronicle*

*Broad. Co. Inc*., 793 F.2d 1010, 1011 (9th Cir. 1986) in asserting that "subjective personal judgments do not raise a genuine issue of material fact." *Schuler* is distinguishable, however, because in that case plaintiff submitted a declaration only from himself regarding his perceived competency. Here, plaintiff's declarations supporting her competency are from co-workers who testify they worked with and observed her personally. The Ninth Circuit has held testimony from coworkers to be relevant and probative in employment discrimination claims. *See E.E.O.C. v. Boeing Co*., 577 F.3d 1044, 1051 (9th Cir. 2009) ("We therefore adopt the Tenth Circuit's view that 'co-workers' assessment[s]' of a plaintiff's work should be considered because they can be 'clearly probative of pretext.'") (citation omitted).

Defendant also argues, with reliance on *Braunling*, that because accommodation would not remedy plaintiff's performance problems, plaintiff cannot show she could perform the essential functions of her position with or without accommodation. 220 F.3d at 1157. However, here, plaintiff worked in the organization for three years before she was disciplined or issued any kind of negative performance review. Hicks Decl. ¶ 11. Defendant's evidence of plaintiff's subpar performance does not establish as a matter of law she could not perform the essential duties; it shows only she did not do so to her employer's satisfaction, which is relevant to her performance, not her qualified status. *See Angelone v. Seyfarth Shaw, LLP*, No. CIV S05-2106, 2007 WL 1033458, at *7 (E.D. Cal. Apr. 3, 2007) (defendant's proffered evidence of plaintiff's poor performance relevant as evidence of legitimate non-discriminatory motive, "[h]owever, it is not clear that such evidence should be used in the court's inquiry as to whether plaintiff was a qualified individual, capable of performing the essential functions of her job."). Plaintiff has raised a genuine dispute as to her capability of performing the essential functions of her job, and therefore her qualified status.

2. Defendant's Undue Hardship Defense

Even assuming plaintiff is a qualified individual, defendant argues summary judgment is appropriate because the requested accommodation – an ASL interpreter at every staff meeting – is an undue hardship. Def.'s Mot. at 9. Plaintiff argues defendant fails to meet its burden to show the requested accommodation caused "undue hardship." Opp'n at 11.

The ADA expressly provides that reasonable accommodations include "interpreters, and other similar accommodations." 42 U.S.C. § 2112(9). Whether defendant can show an accommodation is an undue hardship depends on a fact-specific, individualized inquiry. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002); *see also Weaving v. City of Hillsboro*, No. 10-CV-1432, 2012 WL 526425, at *17 (D. Or. Feb. 16, 2012). "Undue hardship refers not only to financial difficulty, but to reasonable accommodations that are unduly extensive, substantial, or disruptive, or those that would fundamentally alter the nature or operation of the business." *Id.* The bar for undue hardship is "high." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1014 (N.D. Cal. 2011).

A triable issue exists regarding whether requiring an interpreter for staff meetings and training sessions is reasonable. *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1111–13 (9th Cir. 2010) (question of fact remained regarding whether the employer failed to provide the deaf plaintiff a reasonable accommodation because it did not provide him with a sign language interpreter for certain staff meetings, disciplinary sessions, and training). Interpreters have been found to not be an undue hardship to employers. *See EEOC v. Creative Networks, L.L.C.*, 912 F. Supp. 2d 828, 836-37 (D. Az. 2012) (holding that a deaf employee is a qualified individual and hiring an interpreter for pre-employment orientation and training would not have caused an undue hardship).

Defendant has submitted declarations supporting its position that a financial hardship is posed by hiring a certified ASL interpreter. Marchant Decl. ¶ 8; Ex. F, Rediger Decl. However, the fact that defendant retained an interpreter for at least some staff meetings from 2005 to 2008 (ECF No. 71 at 78), and hired Maas at least in part to serve as an interpreter, undermines its showing of hardship. UMF 81. Moreover, the extent to which an interpreter is needed and the costs associated with an interpreter are purely speculative because the extent of interpretation and written communications (summary notes, typed agendas) required for reasonable accommodation are disputed. At hearing, defendant conceded there is no case in which a court has relied only on speculative costs and financial statements to find an undue burden at the summary judgment stage.

In arguing plaintiff's proffered financial justifications are merely speculative, and by showing that defendant had at some point retained interpreting services, plaintiff has raised a genuine factual dispute as to whether the financial burden to defendant in providing an interpreter to plaintiff for staff meetings and trainings is an undue hardship. *See O'Bryan v. State, ex rel. Its Dep't of Conservation & Natural Res.*, No. 3:04-CV-00482, 2006 WL 2711550, at *5 (D. Nev. Sept. 21, 2006) (denying summary judgment on grounds of undue hardship because "the inquiry is rarely suitable for resolution on summary judgment" and only proffered evidence was deposition testimony) (internal citations omitted); *U.S. E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, No. 5:10-CV-03911, 2013 WL 1435290, at *14 (N.D. Cal. Apr. 9, 2013) ("undue hardship requires proof of actual imposition or disruption . . . the magnitude and the fact of hardship require an examination of the facts of the specific case.").

Summary judgment is denied as to defendant's undue hardship defense and plaintiff's discrimination claim.

B. Second Claim: Retaliation Under the ADA

The Ninth Circuit applies the Title VII framework to ADA retaliation claims. *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003). The plaintiff must make out a prima facie case by showing "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Id.* (internal citations omitted); *see also Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). Temporal proximity between protected activity and an adverse action is sufficient to support an inference of causation. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). If a prima facie case is established, the burden-shifting analysis applies and the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment actions. If the employer does so, the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual. *Pardi*, 389 F.3d at 849. "If the . . . plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employee was a pretext, then the retaliation case proceeds beyond the summary judgment stage." *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).

An "adverse employment action" means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the [plaintiff] or others from engaging in protected activity." *Ray*, 217 F.3d at 1242–43; *accord Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Only non-trivial employment actions that would deter reasonable employees from complaining about [civil rights] violations will constitute actionable retaliation."). The Ninth Circuit has applied a "motivating factor" standard in ADA retaliation cases. *Head v. Glacier Nw. Inc*., 413 F.3d 1053, 1065 (9th Cir. 2005). But in light of the Supreme Court's decision in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517 (2013), holding the causal link between the protected activity and the employer's adverse action in a Title VII retaliation claim must be "proved according to traditional principles of but-for causation," *id.* at 2533, and the Ninth Circuit's rule that the Title VII retaliation framework applies to ADA retaliation claims, *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc), it appears the Circuit's decision in the *Head* case has been abrogated. Since *Nassar*, district courts within the Circuit have applied the more stringent "but-for" causation standard. *See, e.g., Brooks v. Capistrano Unified Sch. Dist*., 1 F. Supp. 3d 1029 (C.D. Cal. Feb. 20, 2014) (applying but-for causation). The Ninth Circuit has not yet addressed this issue in a published decision, but this court agrees with the trend emerging in the district courts and applies the but-for causation standard as set forth in *Nassar*.

In this case, plaintiff engaged in protected activity under the ADA when she retained an attorney who contacted ARC about plaintiff's allegations of discrimination on October 14 and October 28, 2008 (Kazerounian Decl. ¶ 47), when she filed an internal complaint on February 25, 2009 (Ex. I, Rediger Decl.), when she complained that the accommodation provided by ARC – interpreter Maas – was inadequate in March 2009 (Kazerounian Depo. at 206, Ex. 1 ECF No. 76-1), and when she filed a charge of discrimination with DFEH on December 9, 2009 (Exs. I & J, Rediger Decl.). Plaintiff alleges she suffered adverse employment actions in the form of (1) a disciplinary writeup on March 21, 2008; (2) a negative performance evaluation on October 9, 2008; (3) a second disciplinary writeup on March 25, 2009; (4) a "scathing letter" to ARC's worker's compensation carrier in April 2009 stating that plaintiff "lack[s] both

professional and interpersonal boundaries" and providing examples; (5) a final warning on September 30, 2009; and (6) a threat of termination in October 2009. Opp'n at 5.

Examples of employment actions courts have held to be adverse include "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Carvajal v. Pride Indus., Inc.*, No. 10CV2319, 2014 WL 1921732, at *6 (S.D. Cal. May 14, 2014). "By contrast, we have held that declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions." *Id.*

Even assuming all or some of the actions plaintiff points to constitute adverse employment actions under the ADA, plaintiff has not pointed to any causal link between her complaints and allegedly adverse actions occurring before March 2009. Only the disciplinary writeup in March 2009, the "scathing letter" in April 2009, and the subsequent warnings in September and October 2009 occurred after plaintiff contacted an attorney in October 2008 and lodged her internal complaint in February 2009. Some causation can be inferred from temporal proximity. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (sufficient evidence of causation existed where adverse actions occurred less than three months after complaint was filed, two weeks after charge first investigated, and less than two months after investigation ended). Facts sufficient to establish the causation element of a prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. *Id.* In this case, the record contains evidence that plaintiff's attorney contacted defendant in October 2008 and plaintiff herself made internal complaints in February and March of 2009; thereafter she received disciplinary write-ups, warnings, and threats of termination throughout 2009. This temporal proximity is sufficient to support a factfinder's conclusion of at least some causal link.

Assuming plaintiff has shown a prima facie case of retaliation, the burden shifts to defendant to show a legitimate, non-retaliatory reason for the adverse action. Defendant has met its burden on summary judgment here. After plaintiff's complaints in 2009, it is undisputed that

she was disciplined for failing to properly log medication as part of her job duties, UMF 41, and was disciplined for failing to implement training, understand and respond to client needs effectively, disrupting ARC classes and regularly requiring staff to assist her. UMF 43. These criticisms were consistent with feedback plaintiff received even before her protected activity; for example, plaintiff was also written up in March 2008 for insubordination and unprofessionalism, UMF 73. The consistent and varied documentations of plaintiff's deficient performance are a sufficiently legitimate, non-retaliatory reasons for the alleged adverse actions. *See Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d at 1038 (finding defendant put forth legitimate, nonretaliatory reasons under ADA for adverse action with "reported incidents of poor judgment and inappropriate conduct on [plaintiff's] part").

In the face of the burden that has shifted back to her, "plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Maxwell v. Verde Valley Ambulance Co. Inc.*, No. CV-13-08044, 2014 WL 4470512, at *10 (D. Ariz. Sept. 11, 2014) (internal citations omitted). Plaintiff has not met her burden. "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene,* 272 F.3d at 1142. The Ninth Circuit has found that when the only evidence of pretext is previous positive performance reviews, that is insufficient to show the adverse action is pretextual where there was "a long history of disagreeing with coworkers and management." *Massucco v. Grp. Health Co-op*., 255 F. App'x 129, 131-32 (9th Cir. 2007). Here, plaintiff's performance issues did not begin with her October 2008 performance review; the record contains a memorandum documenting a discussion with plaintiff about her poor performance in February 2008, for example. ECF No. 71 at 72. Though only a "small amount of direct evidence is necessary in order to create a genuine issue of material fact as to pretext," *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001), plaintiff points to no direct evidence. Rather, she relies only on the tenuous temporal connection. Opp'n at 16-17. Plaintiff also concedes there were times going back to 2007 when she herself thought she was not doing a good job, thought she might be fired, and was told by management she was "doing a bad

job." *See, e.g.*, UMFs 74, 75. A reasonable factfinder could not find defendant's adverse actions taken against plaintiff were pretextual.

The court grants summary judgment as to this claim.

C. Third Claim: Constructive Discharge Under the ADA

A "constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious." *Brooks v. City of San Mateo*, 229 F.3d at 930 (citations omitted). To survive summary judgment, "a plaintiff must show there are triable issues of fact as to whether a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Hardage v. CBS Broad., Inc*., 427 F.3d 1177, 1184 (9th Cir.2005), *as amended by*, 433 F.3d 672 (9th Cir. 2006), 436 F.3d 1050 (quotations, punctuation and citations omitted). Such intolerable conditions may be shown through a continuous pattern of harsh treatment. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1412 (9th Cir.1996); *Watson v. Nationwide Ins. Co*., 823 F.2d 360, 361 (9th Cir. 1987). The Ninth Circuit has "set the bar high for a claim of constructive discharge . . . ." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007).

The inquiry as to whether an employee is subjected to treatment amounting to constructive discharge typically is "left to the trier of fact." *Lawson v. State of Washington*, 319 F.3d 498, 503 (9th Cir. 2003); *see also DesRosiers v. Hartford*, 979 F. Supp. 2d 1036, 1052 (E.D. Cal. 2013) (whether handling of accommodation requests "rendered Plaintiff's employment so untenable as to force her resignation and constitute a constructive discharge presents factual questions far beyond the purview of a motion for summary judgment.").

Here, plaintiff filed a complaint of discrimination with the EEOC on October 10, 2010, saying she "was forced to resign because [her] supervisor refused to provide [her] a reasonable accommodation, which inhibited [her] from performing the essential functions [of] her job." UMF 84. In fact, the record before the court demonstrates a reasonable juror could find plaintiff was subjected to unreasonable working conditions forcing her to resign. Plaintiff made an internal complaint of her supervisor's harshness in February 2009, writing a letter to Guenther

and Elizabeth Campbell in HR about the "insulting, cruel, and discriminatory treatment" she had experienced and asked for help. Rediger Decl. at 98. Plaintiff testified she was treated more harshly than others, saying they were "always picking on me . . . they just wanted me to quit. It was the same thing over and over, and I just got fed up and tired." Kazerounian Depo. at 110–11, Ex. B Rediger Decl. In Felland's October 22, 2009 email to plaintiff, she acknowledges (and denies) plaintiff's belief that Felland is more harsh with plaintiff than other workers. ECF No. 71 at 160.

Plaintiff's sworn allegations in her DFEH and EEOC complaints (Exs. I & J, Rediger Decl.) that defendant failed to accommodate her disability presents a triable issue such that the failure to accommodate motivated plaintiff's resignation. *Velente-Hook v. E. Plumas Health Care*, 368 F. Supp. 2d 1084, 1102 (E.D. Cal. 2005) (defendant refused to explore reasonable accommodations and participate in interactive process; plaintiff concluded defendant was not going to accommodate her disability to allow her to work, and she had no choice but to resign); *Kent by Gillespie v. Derwinski*, 790 F. Supp. 1032, 1042 (E.D. Wash. 1991) (finding defendants' failure to accommodate the plaintiff's handicap resulted in constructive discharge); *but see Pickens v. Astrue*, 252 F. App'x 795 (9th Cir. 2007) (employer's revocation of liberal leave accommodation could not objectively be viewed as hostile, as required to amount to constructive discharge). Whether the lack of accommodation effectively forced plaintiff to resign is a factual question appropriate for a jury.

Summary judgment is denied as to this claim.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the court orders as follows:

1. Defendant's motion for summary judgment is GRANTED as to plaintiff's retaliation claims.
2. Defendant's motion for summary judgment is DENIED as to plaintiff's disability and constructive discharge claims.

/////

/////

3. The final pretrial conference scheduled for September 3, 2015 at 3:30 p.m. is confirmed, with a joint pretrial conference statement due by August 20, 2015.

IT IS SO ORDERED.

DATED: July 10, 2015.

UNITED STATES DISTRICT JUDGE